UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | Case No: 1:09-CR-181 |
| v. | ) | |
| | ) | |
| EDDIE ROLLINS | ) | Chief Judge Curtis L. Collier |
| | ) | |

**MEMORANDUM**

Before the Court is Defendant Eddie Rollins' ("Defendant") motion to suppress evidence seized from his automobile during traffic stops conducted on September 15, 2008 and June 25, 2009 and Defendant's motion to suppress a statement given by Defendant to law enforcement officers (Court File Nos. 304, 543). The Court referred the motions and requests to United States Magistrate Judge William B. Mitchell Carter pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) (Court File No. 549). Judge Carter held an evidentiary hearing on the matter on July 1, 2010 and issued a Report and Recommendation ("R&R") on the motions (Court File Nos. 584, 679). Defendant filed objections to the R&R within the given fourteen days (Court File No. 693). For the following reasons, the Court will **ACCEPT** and **ADOPT** the R&R (Court File No. 679). Defendant's motions to suppress will be **DENIED** (Court File Nos. 304, 543).

**I.     RELEVANT FACTS**

The Court incorporates those portions of the magistrate judge's recitation of the facts to which objections have not been made, and only recounts the facts underlying the issues addressed in this Memorandum.

On September 15, 2008, Grundy County Deputy Sheriff Jon Bell ("Deputy Bell") was

traveling in Gruetli-Laager, Tennessee in an unmarked vehicle. The vehicle behind him followed very closely and then passed him in a no-passing zone. Deputy Bell activated his blue lights, and Defendant pulled over into a private driveway. Defendant then exited his vehicle and asked Deputy Bell to not arrest him because he was driving with a revoked license. Deputy Bell asked Defendant to sit in the patrol car while he verified Defendant's license status which was, in fact, revoked. Deputy Bell then told Defendant he was going to jail.

Next, Deputy Bell procured a tow-slip, called for a tow truck, and walked to Defendant's vehicle to search the vehicle. At the time, he believed he was justified to conduct a search incident to arrest and stated such in an affidavit of complaint. While searching the vehicle, Bell opened the driver's side door and saw a rag containing a glass pipe which he believed was used to smoke methamphetamine. In the glove box, he also found two bottles of iodine and a bag of pseudoephedrine.

On June 25, 2009, Officer Alvis Hawes ("Officer Hawes"), an officer with the Tracy City Police Department, was on routine patrol duty. He clocked Defendant driving 54 miles per hour in a 30 miles per hour zone. He followed Defendant to the Dutchmaid Bakery in Tracy City where Defendant pulled over on the side of the road in front of the bakery. When he approached Defendant's vehicle, he asked Defendant for his license, registration, and proof of insurance. Defendant could not produce any of these items. Officer Hawes then proceeded to the police radio to give the dispatcher Defendant's birth date and social security number. The dispatcher reported Defendant's license had been revoked, and Officer Hawes decided to arrest Defendant.

During this time, Deputy Bell heard the exchange over the police radio and recognized Defendant's name. He called Officer Hawes and informed him Defendant might have

methamphetamine on him. Officer Hawes waited for Deputy Bell to arrive before he placed Defendant under arrest and conducted a search of the vehicle.

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must "make a de novo determination of those portions of the [R&R] to which objection is made" and "may accept, reject, or modify, in whole or in part," the magistrate judge's findings or recommendations. The Court has "broad discretion" in conducting a *de novo* determination and is not required to rehear any contested testimony. *United States v. Raddatz*, 447 U.S. 667, 674, 681 (1980). "Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on the magistrate's proposed findings and recommendations." *Id.* at 676.

## III. DISCUSSION

Defendant objects to the magistrate judge's recommendations as to the traffic stops taking place on September 15, 2008 and June 25, 2009. Defendant does not object, however, to the recommendation regarding his motion to suppress the statement of Defendant (Court File No. 693).

### A. September 15, 2008 Traffic Stop

The R&R recommends the motion to suppress evidence be denied on the basis the search was a valid inventory search. Defendant objects to (1) the conclusion of law reached by Judge Carter in regards to the holding of *Arizona v. Gant*, 129 S.Ct. 1710 (2009); (2) Judge Carter's reliance on Deputy Bell's testimony that he conducted an inventory search when he made a previous sworn statement he conducted a search incident to arrest; and (3) Judge Carter's finding the officer

3

actually took custody of the vehicle (Court File No. 693).

   1.   *Arizona v. Gant*

Defendant objects to the magistrate judge's findings of facts and conclusions of law on the basis the R&R did not properly apply the law in *Arizona v. Gant* to the facts in this case (Court File No. 693). Generally, a warrantless search of a defendant's vehicle is impermissible under the Fourth Amendment. *Katz v. United States*, 389 U.S. 347 (1967). However, an officer may search a defendant's vehicle without probable cause for the purpose of conducting an inventory search. *Colorado v. Bertine*, 479 U.S. 367, 372 (1987); *United States v. Campbell*, 486 F.3d 949, 959 (6th Cir. 2007); *United States v. Wright*, No. 4:08-cr-18, 2010 WL 841307, at * 5 (E.D. Tenn. March 3, 2010). Inventory searches "serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen or vandalized property, and to guard the police from danger." *Bertine*, 479 U.S. at 372; *United States v. Smith*, 510 F.3d 641, 650-51 (6th Cir. 2007). In addition, in some instances, police may conduct a search incident to arrest. In *Arizona v. Gant*, the Supreme Court held "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." 129 S.Ct. at 1723-24.

Plaintiff argues the September 15, 2008 traffic stop was a search incident to arrest rather than a valid inventory search. In addition, Plaintiff seems to suggest the *Gant* decision, which was reached April 21, 2009, should apply retroactively to this case. If the search was in fact a search incident to arrest and this Court decided to apply *Gant* retroactively, it would require evidence found in Defendant's vehicle to be suppressed. *See generally Gant,* 129 S.Ct. 1710. However, the R&R

4

found the search was a valid inventory search (Court File No. 679). Therefore, if the search was a valid inventory search, the applicability of *Gant* need not be decided. Therefore the relevant inquiry here is whether the search was valid as an inventory search.

### 2. Reliance on Deputy Bell's Testimony

Defendant contends the search was not valid as an inventory search. First, Defendant argues this Court should not consider the search to be an inventory search because that is not the type of search Deputy Bell intended to conduct (Court File No. 693). As evidence, Defendant cites the fact Sheriff Brent Myers ("Sheriff Myers") signed two separate affidavits stating Deputy Bell conducted a search incident to arrest (Court File No. 693 at 22). In addition, Deputy Bell could not produce the original nor a copy of the inventory sheet he prepared at the scene, and he did not have a copy the tow slip (*id.* at 2-3; Court File No. 712 ("Tr") at 48). Nevertheless, during the suppression hearing, the magistrate judge found Deputy Bell's testimony that he conducted an inventory search to be credible (Court File No. 679). Still, Defendant asserts Bell's testimony should not be accepted in light of the contradictory evidence.

In considering testimony related to a motion to suppress, 'the judge should receive the evidence in question and give it such weight as his judgment and experience counsel.'" *United States v. Matlock*, 415 U.S. 164, 174 (1994). In addition, the language in the affidavit that Deputy Bell conducted a search incident to arrest should not vitiate application of another valid basis for the search. *See e.g., United States v. Robinson*, No. 2:10-CR-05, 2010 WL 2158333, at *7 (E.D. Tenn. March 17, 2010) (finding even though officers conducted a search incident to arrest, "any inventory search of th[e] vehicle would have led to the inevitable discovery of the [item seized]"); *United States v. McGhee*, 672 F. Supp. 2d 804, 814 (S.D. Ohio Nov. 20, 2009) (stating the "reference in the

report to a search incident to arrest is insufficient to establish that this was the only basis for the search or that no inventory search occurred); *United States v. Sands*, 329 F. App'x 794, 798 (10th Cir. 2009) (explaining "though the search [was] characterized in some places in the record as incident to arrest, the officer who conducted the search testified that it was an inventory search"; therefore, it was proper for the court to find it was an inventory search); *United States v. Iodice*, 525 F.3d 179, 186 (2d Cir. 2008) (failing to find a witness' testimony not credible where the witness characterized a search as incident to arrest in one sworn affidavit and as an inventory search in another). Thus, although Sheriff Myer's affidavits indicate a search incident to arrest, this does not preclude the Court from finding a valid inventory search occurred.

### 3. Validity of Inventory Search

Next, Defendant argues even if Deputy Bell's testimony was credible, the magistrate judge erred in finding Deputy Bell actually took custody of the vehicle (Court File No. 693 at 3). To constitute a valid inventory search, (1) police must lawfully take control of the vehicle; (2) the search must be conducted in accordance with established police routine; and (3) the police policy itself must be reasonable. *Smith,* 510 F.3d at 651; *United States v. Tackett*, 486 F.3d 230, 232 (6th Cir. 2007) (explaining "whether a police department maintains a written policy is not determinative"); *Wright*, 2010 WL 841307 at * 5; *see generally Bertine*, 479 U.S. 367. A vehicle can lawfully be in police custody even though it has not yet been towed to an impound lot if such actions reflect the inventory policy of the law enforcement agency. *United States v. Kimes*, 246 F.3d 800, 804 (6th Cir. 2001). Deputy Bell testified it is standard procedure to conduct an inventory search of the vehicle prior to it being towed (Tr. 42-44). This is a reasonable police policy which furthers the purpose of protecting the vehicle owner's property. Therefore, this Court finds

6

Defendant's vehicle was lawfully in police custody, and the search was valid as an inventory search.

## B. June 25, 2009 Traffic Stop

Defendant also objects to the recommendation denying the motion to suppress evidence as to the traffic stop on June 25, 2009. Unlike with the previous traffic stop, Defendant does not argue this search was not an inventory search. Rather, Defendant appears to argue (1) the search was conducted as a pretext for an investigatory search; (2) the search, which took place after the *Gant* decision, was in violation of the ban against unreasonable searches and seizures under *Gant*; and (3) alternate means existed to conducting an inventory search of the vehicle (Court File No. 693 at 4-6).

### 1. Pretextual Search

Defendant argues Officer Hawes conducted the June 25, 2009 search for purposes of investigation after learning of Defendant's prior arrest on September 15, 2008 (Court File No. 693). Indeed, an inventory search may not be conducted as a pretext for an investigation. *Bertine*, 479 S.Ct. at 372; *Tackett*, 486 F.3d at 232. Nevertheless, "an officer's subjective belief that incriminating evidence will be found 'does not invalidate an otherwise proper inventory search.'" *Wright*, 2010 WL 841307 at *5 (quoting *Smith*, 510 F.3d at 651).

According to his testimony, Officer Hawes clearly suspected there may be illegal contraband in Defendant's vehicle before he conducted an inventory search. In fact, Officer Hawes testified Deputy Bell informed him Defendant might have evidence of methamphetamine manufacturing in his car after he stopped Defendant for speeding but before he placed Defendant under arrest (Tr. 24-25). Therefore, Defendant argues Officer Hawes conducted the inventory search for the sole purpose of acting on the information Deputy Bell gave him. However, Officer Hawes testified at the suppression hearing it is law enforcement policy to always conduct inventory searches before

7

impoundment, and he intended to adhere to the policy (Tr. 29, 35-36). Therefore, it is clear Officer Hawes would have conducted the search upon arresting Defendant even without the information from Deputy Bell. *See United States v. Robinson*, 390 F. 3d 853, 871 (6th Cir. 2004) (stating because "the record indicate[d] that an inventory search would have been conducted in accordance with . . . police policy . . . the contents of the vehicle would be admissible under the doctrine of inevitable discovery"); *Kimes*, 246 F. 3d at 804. Just because he and Deputy Bell suspected they might find evidence of methamphetamine manufacturing does not invalidate an otherwise valid inventory search. *See Smith*, 510 F. 3d at 651.

### 2. Violation of *Gant*

Defendant also asserts the *Gant* decision limits the scope of valid inventory searches as well (Court File No. 693 at 5). Here, the June 25, 2009 traffic stop occurred after the *Gant* decision was reached. However, the Court declines to extend the holding of *Gant* to cover valid inventory searches. *See e.g., Robinson*, 2010 WL 2158333, at *7; *Thompson-Bey*, 2010 WL 2711105, at *15 (holding, where the defendant argued the officer conducted an inventory search that would "no longer be justified incident to the suspect's arrest in the wake of the *Gant* decision," such inventory search was valid as long as it was conducted pursuant to a valid inventory policy).

### 3. Alternative Means

Finally, Defendant argues there were alternative means to impounding Defendant's vehicle, and subsequently needing to conduct an inventory search, such as having Defendant call someone to come pick up the vehicle (Court File No. 693 at 6). However, Officer Hawes testified it is standard policy to tow a vehicle in a situation such as the one at hand where a vehicle is left "either on the side of the road . . . or on private property" (Tr. 36). This Court finds such policy to be

reasonable. Because Defendant's vehicle was impounded pursuant to police policy, the officer was not obligated to pursue alternate means. *See e.g., Wright,* 2010 WL 841307, at *6.

**IV.     CONCLUSION**

For the above stated reasons, the Court will **ACCEPT** and **ADOPT** the Report and Recommendation (Court File No. 679) and will **DENY** Defendant's motions to suppress (Court File Nos. 304, 543).

**An Order shall enter.**

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**