UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | | |
|---|---|---|---|
| EDDIE ROLLINS, | ) | | |
| | ) | | |
| Petitioner, | ) | | |
| | ) | | |
| v. | ) | Nos. | 1:09-CR-181-TRM-CHS-4 |
| | ) | | 1:15-CV-29-TRM |
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Respondent. | ) | | |

## **MEMORANDUM OPINION**

Before the Court is Petitioner's supplemented motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Docs. 1560, 1597, 1651].[1] The United States responded in opposition on May 4, 2016 [Doc. 1641]; Petitioner replied on May 31, 2016 [Doc. 1655]. This Court is also in possession of Petitioner's *pro se* requests to withdraw one of his claims [Doc. 1703] and for the appointment of counsel [Doc. 1525]. For the reasons discussed below, Petitioner's pro se request to withdraw one of his claims [Doc. 1703] will be **GRANTED**, motion for the appointment of counsel [Doc. 1525] will be **DENIED**, and his supplemented § 2255 motion [Docs. 1560, 1597, 1651] will be **DENIED** and **DISMISSED WITH PREJUDICE**.

**I. BACKGROUND**

At the close of a fourteen-day trial in 2011, Petitioner and three co-defendants—Harry Allen Pritchett, Michael Coffelt, and Jessie H. Johnson—were convicted of various drug and

---

[1] On February 11, 2016, this Court appointed Federal Defenders of Eastern Tennessee (FDSET) for the limited purpose of investigating Petitioner's case to determine whether he was entitled to collateral relief based on *Johnson v. United States*, 135 S. Ct. 2551 (2015). E.D. Tenn. S.O. 16-02 (Feb. 11, 2016). Consistent with that appointment, FDSET filed a supplement to Petitioner's previously field petition for collateral relief [Doc. 1651].

firearms offenses arising from their involvement in a methamphetamine conspiracy in Marion County, Tennessee. *United States v. Pritchett*, 749 F.3d 417 (6th Cir. 2014). The evidence against Petitioner included evidence of methamphetamine manufacturing found in his vehicle following traffic stops in September of 2008 and June of 2009, respectively; pharmacy records showing that he purchased nearly 60 grams of pseudoephedrine in a series of 27 transactions between August of 2008 and September of 2009; testimony from co-defendants who accompanied Petitioner to buy pseudoephedrine or iodine, manufactured methamphetamine with Petitioner, or otherwise observed him "cooking" methamphetamine; Petitioner's own statements to law enforcement agents; and expert testimony about methamphetamine manufacturing generally. Faced with the foregoing, a jury convicted Petitioner of conspiring to distribute and manufacture at least five grams of methamphetamine or fifty grams of a mixture containing methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(B); conspiring to possess or distribute pseudoephedrine or iodine for the use of methamphetamine manufacturing, in violation of 21 U.S.C. §§ 846 and 841(c)(2); manufacturing methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); and possessing chemicals, products, material or equipment that may be used to manufacture methamphetamine, in violation of 21 U.S.C. § 843(b)(6) [Doc. 1244].

Based on two prior convictions—a federal drug conviction and a Georgia conviction for the destruction of property by fire or explosive—the United States Probation Office deemed Petitioner to be a career-offender under Section 4B1.1 of the United States Sentencing Guidelines [Presentence Investigation Report (PSR) ¶¶ 38, 48, 50]. In accordance with that designation, this Court sentenced Petitioner to 360 months' imprisonment, a term at the bottom

of his advisory Guidelines range [Doc. 1336]. Petitioner appealed, but the Sixth Court of Appeals affirmed his judgment and conviction. *See Pritchett*, 749 F.3d at 437.

On February 9, 2015, Petitioner field an unsigned motion to vacate, set aside, or correct his sentence pursuant to § 2255 [Doc. 1547]. In compliance with an Order of this Court, Petitioner signed and resubmitted the petition on March 6, 2015 [Doc. 1560]. Six months later—on September 21, 2015—Petitioner requested leave to supplement his petition with a challenge to his career-offender enhancement based on *Johnson v. United States*, 135 S. Ct. 2551 (2015), which held that the residual provision of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), was unconstitutionally vague [Doc. 1597 (requesting leave to file claim)]. This Court received the proposed supplement on May 30, 2016 [Doc. 1651]. In that supplement, Petitioner argues that *Johnson* invalidated the identically worded residual clause in Section 4B1.2, his prior Georgia conviction for "Criminal Damage to Property, 2nd Degree," in violation of Georgia Code Annotated § 16-7-23(a)(2), only qualified as a crime of violence under that provision, and, as a result, he now lacks sufficient predicates for enhancement [*Id.*].

On March 6, 2017, the Supreme Court held that the United States Sentencing Guidelines are "not amenable to vagueness challenges." *Beckles v. United States*, 137 S.Ct. 886, 894 (2017). Less than one month later—on April 3, 2017, Petitioner filed a motion acknowledging that *Beckles* foreclosed his request for relief based on *Johnson*, asking to withdraw that claim, and requesting that this Court appoint counsel to assist with his other grounds for collateral relief [Doc. 1703]. Recently, the United States responded in opposition to the motion to withdraw, requesting instead that this Court deny the entirety of Petitioner's § 2255 petition with prejudice [Doc. 1708].

## II. REQUEST FOR THE APPOINTMENT OF COUNSEL

Several months before Petitioner filed the original § 2255 motion, he submitted a pro se request that this Court either "appoint new counsel for the defense" or "send him a copy of a 28 U.S.C. § 2255 [form] so that he may proceed pro se in a habeas corpus claim of ineffective assistance of counsel" [Doc. 1525]. As justification, Petitioner explained that appellate counsel had refused to request certiorari because—in his opinion—there were "no meritorious grounds for appeal" [*Id.*]. Because Petitioner has already submitted the instant collateral challenge, his request for counsel or, in alternative, the forms required for submission of the same is moot. To the extent that Petitioner seeks the appointment of counsel to assist in the litigation of his existing post-conviction challenge [Doc. 1703 (asking that this Court "allow [FDSET] attorney Erin Rust to assist [Petitioner] in [his] original arguments [for collateral relief]")], that request will be denied because Petitioner has not established that counsel is necessary to ensure that his theories for collateral relief are fairly raised or heard. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986); *see also Childs v. Pellegrin*, 822 F.2d 1382, 1284 (6th Cir. 1987) (explaining that the appointment of counsel in a civil case is a matter within the discretion of the district court).

## III. REQUEST FOR LEAVE TO "WITHDRAW" CLAIM BASED ON *JOHNSON*

In addition to the supplemented petition and requests for counsel, this Court is in possession of Petitioner's pro se request for leave to "withdraw" one of his four grounds for collateral relief—the challenge to his career-offender enhancement based on *Johnson* [Doc. 1703]. The United States responded in opposition, suggesting that this Court should instead deny all four of Petitioner's grounds for relief on the merits and dismiss his petition with prejudice [Doc. 1708].

Federal Rule of Civil Procedure 41(a)(1)(A)(i) provides that a movant may voluntarily dismiss an action without a court order by filing "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment[.]" By contrast, Federal Rule of Civil Procedure 41(a)(2) provides that "[e]xcept as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Because the United States responded in in opposition to the § 2255 motion and because that response addressed the merits of the claim that Petitioner seeks leave to withdraw, resolution of Petitioner's motion depends on Rule 41(a)(2).

Whether to grant voluntary dismissal under Rule 41(a)(2) is within the sound discretion of the district court. *Grover by Grover v. Eli Lilly and Co.*, 33 F.3d 716, 718 (6th Cir. 1994). An abuse of discretion exists "only where the [non-movant] would suffer 'plain legal prejudice' as a result of a dismissal without prejudice, as opposed to facing the mere prospect of a second lawsuit." *Id.* (quoting *Cone v. West Virginia Pulp & Paper Co.*, 330 U.S. 212, 217 (1947)). Here, allowing Petitioner to drop one but proceed on the three remaining grounds would not prejudice the United States. As such, this Court will allow Petitioner to withdraw the *Johnson*-based challenge to his career-offender designation and limit its analysis to his other three theories for collateral relief.

## IV. SUPPLEMENTED PETITION FOR COLLATERAL RELIEF

### A. Standard of Review

To obtain relief under 28 U.S.C. § 2255, Petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th

5

Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

> **B.** **Analysis**

After withdrawal of Petitioner's *Johnson*-based challenge, the petition contains three grounds for relief. Petitioner argues that counsel rendered constitutionally deficient assistance by: (1) not calling DEA agent Tim Garner and Chief of Police Farrell Hicks as witnesses at trial to counter unspecified "fabrications" during the testimony of ATF agent Chad Johnson (Ground One) [Doc. 1560 p. 4; Doc. 1549 pp. 3–6]; (2) not objecting to allegedly inappropriate contact between the prosecutor and the jury (Ground Two) [Doc. 1560 p. 5; Doc. 1549 pp. 7–9]; and (3) failing to challenge Petitioner's career-offender enhancement as a form of selective prosecution (Ground Three) [Doc. 1560 p. 7; Doc. 1651 pp. 10–11]. Not one of these arguments justifies collateral relief.

A petitioner alleging ineffective assistance must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). First, the petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *id.*, as measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Counsel's assistance is presumed to have been effective, and the petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

6

professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy" (internal citation omitted)).

Second, the petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). If a petitioner fails to prove that he sustained prejudice, the court need not decide whether counsel's performance was deficient.

### 1. Ground One: Failure to Call Witnesses

Petitioner faults counsel for not calling two individuals—DEA agent Tim Garner and Chief of Police Farrell Hicks—as witnesses at trial to counter unspecified "fabrications" during the testimony of ATF agent Chad Johnson. Because counsel neither deviated from professional norms nor caused Petitioner prejudice, his omission cannot serve as a basis for granting collateral relief.

Whether or not to call or question a particular witness is a matter of trial strategy and only constitutes ineffective assistance of counsel when the decision deprives the defendant of a substantial defense. *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *see also Bentley v. Motley*, 248 F. App'x 713, 718 (6th Cir. 2007) (describing review of counsel's decisions about trial strategy as "highly deferential"). No such deprivation has occurred here.

Petitioner speculates that Agent Garner could have "clear[ed] his name" by undermining Agent Johnson's testimony, but makes no effort to identify the substance of the desired testimony or which aspects of Agent Johnson's testimony were "fabrications" requiring clarification. Without additional development, the claim is unreviewable and deniable on that

basis. *See United States v. Roach*, 502 F.3d 425, 442 (6th Cir. 2007) (deeming undeveloped claims unreviewable); *O'Maley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961) ("Conclusions, not substantiated by allegations of fact with some probability of veracity, are not sufficient to warrant a hearing."); s*ee also Hall v. United States*, No. 3:05-cr-36-TAV, 2015 WL 3994834, at *4 (E.D. Tenn. July 1, 2015) ("Petitioner has the burden to establish that he is entitled to relief. . . . The Court cannot evaluate a claim that consists of little more than a single conclusory sentence. The claim must be rejected because it has not been adequately developed, and therefore, is not reviewable.").

Assuming Petitioner wanted counsel to call Agent Garner and Chief Hicks for the purpose of eliciting testimony in support of Petitioner's claim that he was working as an informant, that claim fails because "counsel cannot be faulted for failing to call a defense witness whose testimony would have been, at best, cumulative." *Leija v. Elo*, 9 F. App'x 500, 501 (6th Cir. 2001); *see also United States v. Pierce*, 62 F.3d 818, 833 (6th Cir. 1995) (counsel's performance not deficient for not presenting every possible defense witness, because "many [potential witnesses] were cumulative or unreliable"). Counsel introduced the defense theory that Petitioner believed he was acting with the approval of Agent Garner, for whom he was allegedly working as an informant, during both opening statements and cross-examination of various government witnesses [Doc. 1470 pp. 279 (co-defendant Stephen Baird believed the charges against him resulted from Petitioner and others setting him up and informing on him), 291-93 (Petitioner alerted Baird in advance when Agent Johnson intended to "pick [him] up" on drug charges), 306-07 (testimony from Ella King that she believed Petitioner to have been an informant), 352, 493-94 (testimony from Berry Nolan and Lacy James that Petitioner and Agent Garner were "good friends," that Nolan had "heard" that Petitioner was "acting as an informant,"

8

and that James contacted Petitioner in an effort to secure bond and a cooperation deal from Agent Garner, whom Petitioner had previously described as his cousin); Doc. 1472 pp. 618-19, 636-37 (questions about whether a witness had ever heard or had previously told others that Petitioner was an informant or "snitch"), 684, 700-01, 713-14 (testimony from Dana Morrison that he once observed Petitioner "gassing some dope"), 720, 734-35 (testimony from Jamie Osborne that he and Petitioner purchased pseudoephedrine and other ingredients together and then jointly participated in two methamphetamine cooks); Doc. 1474 pp. 972-73 (testimony from Jesse Alan Johnson that other co-defendants described Petitioner as an informant); Doc. 1475 pp. 1061-62, 1065-66 (testimony that, when officers found components for manufacturing methamphetamine in Petitioner's vehicle after a traffic stop, Petitioner claimed to be an informant and asked them to contact Agent Garner), 1297-98, 1304-05 (testimony that Petitioner claimed to be working for a local police department when arrested in September 2008), 1314-15, 1322 (same, as to an incident in November 2009); Doc. 1469 pp. 71-72 (stating, during opening statement, that Petitioner believed himself to be "trying to gather information in order to give it back to law enforcement to help them in their investigations" and "trying to do the right thing"); Doc. 1479 pp. 1948-55, 1959-60 (same, during closing argument)].

Further, Petitioner testified that he had been friends with Agent Garner for approximately 35 years [Doc. 1478 pp. 1729, 1734-35], that Agent Garner and other law enforcement officers had wanted Petitioner to "do a few buys for them" and "check on a couple of people" while he was on federal probation [*Id.* at 1735-37, 1739, 1750-52, 1761-63, 1766-68; Doc. 1479 pp. 1824-25], and that Petitioner thus believed he was acting under the authorization of law enforcement agents when he engaged in the charged offenses [Doc. 1478 pp. 1744, 1773, 1782-83]. When confronted with inconsistencies between his testimony and Agent Johnson's on cross-

9

examination, Petitioner disputed the veracity of certain portions of Agent Johnson's testimony [*Id.* at 1783-85].

Because no prejudice results from the absence of a witness where the petitioner "testified to all of the facts that the additional evidence might have supported," *United States v. Foreman*, 323 F.3d 498, 504-05 (6th Cir. 2003), failure to call Agent Garner and Chief Hicks does not justify relief.

### 2. Ground Two: Inappropriate Juror Contact

Petitioner argues that counsel erred when he failed to object to alleged contacts between the prosecutor and the jury during deliberations. Specifically, Petitioner claims that, from his holding cell, he could see the prosecutor "going to and from the jury room" with unidentified "paperwork . . . in hand" and that he reported the situation to counsel, who did nothing. He also claims that the prosecutor shared a meal with several jurors during trial. With regard to the latter, this Court is in possession of an affidavit from Petitioner's stepfather, Charles Scission, claiming to have seen "the D.A., his secretary (and possibly more of his office personnel)" sitting with three female jurors at a café one week before the end of trial [Doc. 1549-1]. Faced with the foregoing, Petitioner argues that this Court has no choice but to assume improper and presumptively prejudicial contacts with members of the jury and that "jury members and Court officials discussed the upcoming verdict" during recesses or breaks.

Again, Petitioner has not established that the omission resulted in prejudice. This Court repeatedly instructed the jury not to discuss the case or allow anyone to discuss the case with them, not to watch anything pertaining to the case on television, read anything about the case in the newspaper, or listen to anything about the case on the radio [Doc. 1469 p. 218; Doc. 1470 p. 499; Doc. 1479 p. 1988]. Juries are presumed to follow the instructions that they are given by

the district court, *see, e.g.*, *United States v. Franklin*, 415 F.3d 537, 556 (6th Cir. 2005); *United States v. Neuhausser*, 241 F.3d 460, 469 (6th Cir. 2001), and that presumption is not disturbed by Petitioner's speculation and conjecture about where the prosecutor might have been headed when he passed the holding cell, the content and purpose of unidentified paperwork that the prosecutor was holding at that time, and the potential for improper interactions during recesses in the trial.

### 3. Ground Three: Selective Prosecution

Petitioner faults counsel for not objecting to his classification as a career-offender on the ground that the resulting sentence was far more severe than the sentences imposed on his co-defendants [Doc. 1549 pp. 10–11 (suggesting that he was "victim of selective prosecution")]. This argument overlooks the fact that Petitioner and his co-defendants were not similarly situated.

Unlike his co-defendants, Petitioner qualified as a career-offender under Section 4B1.1 because (1) he "was at least eighteen years old at the time [that he] committed the instant offense[,] . . . (2) the instant offense . . . is a felony that is either a crime of violence or a controlled substance offense[,] and (3) [he] has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S. Sentencing Manual § 4B1.1(a). Because Petitioner met all three requirements of Section 4B1.1—his federal drug conviction qualified as a controlled substance offense and conviction under Georgia Code Annotated § 16-7-23(a)(2) qualified as a crime of violence under the Guidelines residual clause, he was properly classified as a career-offender.[2] Because this Court would have rejected the proposed objection,

---

[2] The ACCA mandates a fifteen-year sentence for any felon who unlawfully possesses a firearm after having sustained three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The statute defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one

11

counsel did not err in failing to raise it. *See, e.g.*, *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010) (explaining that counsel is not constitutionally ineffective for failing to raise a meritless objection).

## IV. CONCLUSION

For the reasons discussed, Petitioner's pro se request to withdraw one of his claims [Doc. 1703] will be **GRANTED**, motion for the appointment of counsel [Doc. 1525] will be **DENIED**, and supplemented § 2255 motion [Docs. 1560, 1597, 1651] will be **DENIED** and **DISMISSED WITH PREJUDICE**. The Court will **CERTIFY** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

---

year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force clause"); (2) "is burglary, arson, or extortion, involves the use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B). It was this third clause—the residual clause—that the Supreme Court deemed unconstitutional in *Johnson*. 135 S. Ct. at 2563. The Court went on to make clear, however, that its decision did "not call into question . . . the remainder of the [ACCA's] definition of violent felony," i.e., the use-of-physical-force and enumerated-offense clauses. *Id.*

Section 4B1.1 classifies a defendant as a career-offender if (1) he or she was at least eighteen years old at the time the defendant committed the instant offense; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) he or she has at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S. Sentencing Manual § 4B1.1(a). Unlike the ACCA, the Guidelines are not subject to void for vagueness analysis and, as a result, the residual clause in Section 4B1.2 remained in effect after *Johnson*. *Beckles v. United States*, 137 S.Ct 886, 894 (2017).

**AN APPROPRIATE ORDER WILL ENTER.**

                                                 /s/*Travis R. McDonough*
                                                 **TRAVIS R. MCDONOUGH**
                                                 **UNITED STATES DISTRICT JUDGE**